UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

STATE OF LOUISIANA, ET AL.                  CIV. ACTION NO. 3:21-03970

VERSUS                                              JUDGE TERRY A. DOUGHTY

XAVIER BECERRA, ET AL.                        MAG. JUDGE KAYLA D. MCCLUSKY

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 64] filed by Defendants Xavier Becerra, in his official capacity as Secretary of Health and Human Services; the U.S. Department of Health and Human Services ("DHH"); Chiquita Brooks–Lasure, in her official capacity as Administrator of the Center for Medicare and Medicaid Services; and the Center for Medicare & Medicaid Service ("CMS") (collectively, the "U.S. Government").   The motion is opposed.   For reasons explained below, it is recommended that the motion be GRANTED.

## Background[1]

On November 5, 2021, the U.S. Government published an Interim Final Rule, ("IFR") which revised the requirements that Medicare- and Medicaid-certified providers and suppliers must meet to participate in the Medicare and Medicaid Programs.   86 Fed. Reg. 61555-01 ("CMS Mandate).   The CMS Mandate required the staff of specific Medicare and Medicaid healthcare providers to be fully vaccinated by January 4, 2022, unless exempt for medical or

---

[1] The following case summary generally tracks the procedural history set forth in the District Court's January 18, 2022 Memorandum Order [doc. # 46].

religious reasons.[2]  *Id.*   Failure to comply with the CMS Mandate could result in penalties up to and including "termination of the Medicare/Medicaid Provider Agreement."   86 Fed. Reg. at 61574.

Perhaps unsurprisingly, the CMS Mandate, plus other vaccine mandates, spawned lawsuits contesting the constitutionality and authority of government agencies to implement vaccine mandates.   One such suit was filed before this Court against the U.S. Government on November 15, 2021, by the States of Louisiana, Montana, Arizona, Alabama, Georgia, Idaho, Indiana, Mississippi, Oklahoma, South Carolina, Utah, and West Virginia, together with an associated motion for preliminary injunction.   *See* doc. #s 1-2.   On November 22, 2022, Plaintiffs filed a First Amended Complaint [doc. #11] adding the State of Ohio and the Commonwealth of Kentucky as additional Plaintiffs, but otherwise adopting, incorporating, and reiterating the allegations of the original Complaint.[3]   On November 30, 2021, the District Court granted the State Governments' motion for preliminary injunction and issued an effectively nationwide injunction that enjoined the U.S. Government from implementing the CMS Mandate. *See* Mem. Ruling and Order [doc. #s 28-29], *Louisiana v. Becerra*, 571 F.Supp.3d 516 (W.D. La. 2021), *vacated and remanded,* No. 21-30734, 2022 WL 2116002 (5th Cir. June 13, 2022).

The U.S. Government filed a notice of appeal on December 1, 2021, together with a motion to stay the nationwide preliminary injunction.   On December 15, 2021, the Fifth Circuit denied the U.S. Government's motion to stay as to the State Governments but granted a stay "as to the order's application to any other jurisdiction."   *See* Order [doc. # 39].   Thereafter, the U.S. Government applied for writs to the Supreme Court for a stay of the injunction in this case and in

_____

[2] The IFR also does not apply to those who telework full time. 86 Fed. Reg. at 61571-72.

[3] Hereinafter Plaintiffs will be referred to collectively as the "State Governments."

a parallel case brought by other States, *Missouri v. Biden*, 571 F.Supp.3d 1079 (E.D. Mo. 2021), *vacated and remanded,* No. 21-3725, 2022 WL 1093036 (8th Cir. Apr. 11, 2022), *cert. denied,* No. 21-1463, 2022 WL 4651648 (U.S. Oct. 3, 2022).

The Supreme Court consolidated the two cases, and, on January 7, 2022, held expedited oral arguments in the matter.   Less than one week later, the Supreme Court issued a written ruling that granted the U.S. Government's application to stay this Court's preliminary injunction order pending disposition of the U.S. Government's appeal before the Fifth Circuit.   *Biden v. Missouri*, ___  U.S. ___; 142 S.Ct. 647 (2022).

Meanwhile, the District Court, in this case, denied the U.S. Government's motion to stay further proceedings pending resolution of the appeal.   (Jan. 18, 2022 Mem. Order [doc. # 46]). In so doing, the District Court observed that "[m]any of the [State Governments]' claims have clearly been decided by the Supreme Court, but some have not.   Some of the remaining issues may require a merits hearing."   *Id*.

On February 2, 2022, the State Governments filed a motion for leave of court to file a second amended, supplemental, and restated complaint to join the State of Tennessee and the Commonwealth of Virginia as additional Plaintiffs and to address the U.S. Government's January 25, 2022 issuance of new guidance applying the CMS Mandate to State Survey Agency and Accrediting Organization Surveyors.   [doc. # 51].   On February 9, 2022, the District Court issued an order wherein it acknowledged that, because of the pending appeal before the Fifth Circuit, it lacked jurisdiction to grant the motion for leave to amend complaint.   (Mem. Ruling [doc. # 59]).   Nonetheless, the Court noted that the only issues in the proposed amended pleading that did not relate to the issues on appeal were the alleged Surveyor Mandate and the constitutional issue of whether the CMS Vaccine Mandate violated the anti-commandeering

doctrine.  *Id*.   Accordingly, the District Court issued an indicative ruling explaining that it was inclined to grant the motion for leave to file the second amended, supplemental, and restated complaint only with regard to the issues of the alleged Surveyor Vaccine Mandate and the alleged violation of the anti-commandeering doctrine.  *Id*.

On February 14, 2022, a Fifth Circuit motions panel denied a motion by the State Governments to remand this case, so they could file an amended complaint in accordance with the District Court's indicative ruling.  *See Louisiana v. Becerra*, No. 21-30734, 2022 WL 445159 (5th Cir. Feb. 14, 2022).   The motions panel was not favorably disposed towards the State Governments' proposed amendment to challenge the U.S. Government's January 25, 2022 issuance of new guidance and to expound upon a claim pursuant to the anti-commandeering doctrine.[4]  *Id*.   As pertinent here, the motions panel observed that neither the Fifth Circuit nor the Supreme Court had made any rulings about the anti-commandeering doctrine.  *Id*.

On March 17, 2022, the U.S. Government filed the instant motion to dismiss [doc. #64] the First Amended Complaint for failure to state a claim upon which relief can be granted in light of the Supreme Court's decision in *Biden v. Missouri*, which, according to the U.S. Government, effectively resolved this matter by either explicitly or implicitly rejecting all of the State Governments' claims.   The U.S. Government noted that in the wake of the Supreme Court decision, plaintiffs in parallel litigation had voluntarily dismissed their challenges to the CMS Mandate.  *See Texas v. Becerra*, Civ. Action No. 21-0229, (N.D. Tex. Jan. 18, 2022); *Florida v. U.S. Dep't of Health & Human Servs*, Civ. Action No. 21-2722 (N.D. Fla. Feb. 4, 2022).   It

---

[4]  The panel stated that the State Governments had not identified a claim under the anti-commandeering doctrine in their original Complaint.  *Id*.   In Count IX, however, the State Governments alleged that the vaccine mandate violated the doctrine.  *See* Compl. [doc. #1]; First Amended Complaint [doc. #11 (adopting allegations of Complaint)].

further argued that the CMS Mandate did not violate the anti-commandeering principle because the vaccination rule imposed the same conditions no matter whether the facilities were privately run or run by the States.

The State Governments filed their opposition to the motion to dismiss on April 8, 2022, wherein they argued that the motion to dismiss should be denied because their claim under the anti-commandeering doctrine was not a basis for the preliminary injunction, and, hence, was not implicated by the Supreme Court's decision staying the injunction.   [doc. # 66].   The State Governments further argued that the First Amended Complaint stated a claim for relief under the anti-commandeering doctrine because the pleading alleged that there were "state-run hospitals" impacted by the CMS Mandate.   *Id*.   Finally, the State Governments added that, once the Fifth Circuit returned jurisdiction to this Court, they should be allowed to amend their complaint to assert additional claims pertaining to the January 25 Guidance and the February 9 Guidance.   *Id*.

On April 29, 2022, the U.S. Government filed a reply brief in support of its motion to dismiss whereby it re-urged its argument that the Supreme Court had explicitly or implicitly decided all of the State Governments' claims and that the anti-commandeering principle was not implicated at all where, as here, "Congress has acted under the Spending Clause, or where federal conditions are imposed on equal terms on state governments and on private parties." [doc. # 69].   As for the State Governments' argument regarding their intent to amend to assert additional claims, the U.S. Government observed that the First Amended Complaint was the operative pleading in this matter.   *Id*.

On June 13, 2022, by agreement of the parties, the Fifth Circuit vacated the District Court's preliminary injunction and remanded the case for further consideration in light of the Supreme Court opinion in *Biden v. Missouri*, ___   U.S. ___; 142 S.Ct. 647 (2022).   *Louisiana*

*v. Becerra*, No. 21-30734, 2022 WL 2116002 (5th Cir. June 13, 2022).   The Fifth Circuit also

vacated, as moot, the motions panel's order denying the motion to remand.   *Id*.   Finally, the

Fifth Circuit declined to express an opinion on whether the district court should grant or deny

leave to amend the complaint or on the propriety of the State Governments' other claims.   *Id*.

On June 29, 2022, the District Court held a telephone status conference with the parties to

discuss the status of the case.   *See* Minutes [doc. # 86].   The State Governments represented

that they intended to file a motion to amend the complaint within the next ten (10) days.   To

date, more than four months later, however, no motion has been filed.

On October 3, 2022, the Supreme Court denied a petition for writ of certiorari that had

been filed in the parallel litigation, *Missouri v. Biden*, No. 21-1463, 2022 WL 4651648 (U.S.

Oct. 3, 2022).[5]   On November 2, 2022, the U.S. Government filed a motion to dismiss

Plaintiffs' complaint in the *Missouri v. Biden* case.   Civil Action No. 4:21-cv-1329 (E.D. Mo.

[doc. #67]).

The matter is ripe.

## Standard of Review

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state

a claim upon which relief can be granted."   FED. R. CIV. P. 12(b)(6).   A pleading states a claim

for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is

entitled to relief . . ."   FED. R. CIV. P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter,

accepted as true, to "state a claim to relief that is plausible on its face."   *Ashcroft v. Iqbal*, 556

---

[5] The Eastern District of Missouri had stayed its case pending disposition of the petition for writ of certiorari filed by the State Plaintiffs.   *See* May 27, 2022 Order, *Missouri v. Biden*, Civ. Action No. 21-1329 (E.D. Mo.) [doc. # 62].

U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).   A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between.  *See id*.   Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.  *See Twombly*, 550 U.S. at 556.   Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679. (citation omitted).   A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly*, 550 U.S. at 556.

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal,* 556 U.S. at 678.   A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8.   *Id*.   Moreover, courts are compelled to dismiss claims grounded upon invalid legal theories even though they might otherwise be well-pleaded. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).   Furthermore, "a complaint may be dismissed if it clearly lacks merit—for example, where there is an absence of law to support a claim of the sort made."   *Thurman v. Med. Transp. Mgmt., Inc.*, 982 F.3d 953, 956 (5th Cir. 2020) (citations and internal quotation marks omitted).

Finally, when considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments.  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted).   However, courts may rely upon "documents incorporated into the

complaint by reference, and matters of which a court may take judicial notice" – including public records.   *Id.* (internal quotation marks and citation omitted); *see also Norris v. Hearst Trust*, 500 F.3d 454, 461 n9 (5th Cir. 2007) (citation omitted) (proper to take judicial notice of matters of public record).

## Analysis

Following a remand from a higher court, the mandate rule requires a district court to effect the appellate court's mandate and to do nothing else.   *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 453 (5th Cir. 2007) (citations omitted).   The mandate rule is a corollary of the law of the case doctrine, which "compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues **expressly or impliedly decided** by the appellate court."   *Id*. (emphasis added) (citation omitted).   Furthermore, "[t]he law of the case doctrine applies not only to issues decided explicitly, but **also to everything decided 'by necessary implication.'**" *In re Felt*, 255 F.3d 220, 225 (5th Cir. 2001) (emphasis added) (citation omitted).   Even if "not expressly addressed in an initial appeal, those matters that were fully briefed to the appellate court and were necessary predicates to the ability to address the issue or issues specifically discussed are deemed to have been decided tacitly or implicitly, and their disposition is law of the case."   *Id*.

The law of the case principles extend to an interlocutory appeal of the granting of a preliminary injunction.   *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 3 F.3d 877, 880–81 (5th Cir. 1993) (On decisions of law, "[a]s in any other interlocutory appeal, our decision constitutes law of the case" with regard to an interlocutory appeal of the granting of a preliminary injunction.).   Therefore, conclusions of law made by an appellate court regarding a

preliminary injunction become the law of the case and binding on that court in further proceedings.   *Gaalla v. Brown*, 460 Fed. App'x. 469, 476 (5th Cir. 2012).

When this court's preliminary injunction reached the Supreme Court within the peculiar procedural context of a motion to stay the injunction, the Supreme Court concluded that "the Secretary did not exceed his statutory authority in requiring that, in order to remain eligible for Medicare and Medicaid dollars, the facilities covered by the interim rule must ensure that their employees be vaccinated against COVID-19."   *Biden v. Missouri,* 142 S. Ct. at 653.   The Court added that it also "disagree[d] with respondents' remaining contentions in support of the injunctions entered below."   *Id*.

On remand, the Fifth Circuit vacated this Court's preliminary injunction and deferred to this Court to further consider this case in light of the Supreme Court opinion.

In its January 18, 2022 order denying the U.S. Government's motion to stay, the District Court determined that the State Governments'

> Motion for Preliminary Injunction listed five primary claims: (1) the Government issued the CMS Mandate without following statutorily required processes (5 U.S.C. § 553); (2) the CMS Mandate is beyond the authority of the Government Defendants; (3) the CMS Mandate is contrary to law; (4) the CMS Mandate is arbitrary and capricious (5 U.S.C. § 706); and (5) Constitutional issues – that the CMS Mandate violates the Spending Clause, Tenth Amendment, Police Power and Non-Delegation Doctrine, and Anti-Commandeering Doctrine.
>
> This Court initially found the Plaintiff States were likely to succeed on the merits on One, Two, Three, Four and parts of Five (Tenth Amendment Police Power and Non-Delegation Doctrine). This Court was unable to determine whether the Plaintiff States were likely to succeed on the merits of the Anti-Commandeering Doctrine and the Spending Clause since it was unclear from the evidence the extent and nature of state involvement . . .
>
> The Supreme Court clearly addressed the above numbered issues in One, Two, Three and Four, but did not address any of the constitutional issues in number Five . . . Therefore, it appears to this Court that issues remain regarding violations of the

9

Tenth Amendment (Police Power and Non-Delegation Doctrine claims), violation
of the Spending Clause, and the Anti-Commandeering Doctrine.

(Jan. 18, 2022 Mem. Order [doc. # 46]).

As the District Court observed, the Supreme Court explicitly *addressed* all of the bases

argued in support of the motion for preliminary injunction except for the constitutional claims.

*Id.*   However, in its order granting the preliminary injunction, the District Court also determined

that the State Governments were likely to succeed on the merits of their claims under the Tenth

Amendment Police Power and Non-Delegation Doctrine.   *See* Jan. 18, 2022 Order [doc. #46].

Furthermore, the State Governments argued in their brief to the Supreme Court that the rule

violated the Spending Clause, the Tenth Amendment, the non-delegation doctrine, and

constitutionally intruded on the States' police powers.   *See* Response to Application for a Stay

Pending Appeal, Becerra v. Louisiana, Nos. 21A240, 21A241 (U.S. Dec. 30, 2021).   Therefore,

the constitutional issues were also part of the record and presented to the Supreme Court for its

consideration.   With that record before it, the Supreme Court nonetheless concluded that the

rule was "a straightforward and predictable example of the 'health and safety' regulations that

Congress has authorized the Secretary to impose," *Biden v. Missouri*, 142 S. Ct. at 653, and that

"the Secretary's rule falls within the authorities that Congress has conferred upon him."   *Id*. at

652.   Therefore, the undersigned concludes that the Supreme Court also implicitly or tacitly

rejected the constitutional claims as well.

In short, with the likely exception of the anti-commandeering claim, the Supreme Court

either explicitly or tacitly rejected all of the State Governments' claims.   Thus, these issues

have been resolved by a higher court and represent the law of the case, which is binding on this

lower court.[6]   As the State Governments appear to concede, *See* Pl. Opp. Brief, pp. 4-5 [doc. #

66], this determination is buttressed by the District Court's indicative ruling on the State

Governments' motion to amend.   *See* Feb. 9, 2022 Mem. Ruling [doc. #46].   In that ruling,

Judge Doughty specifically stated that "[t]he only issues that do not relate to issues on appeal are

the alleged Surveyor Vaccine Mandate and the constitutional issue of whether the CMS Vaccine

Mandate violated the Anti-Commandeering Doctrine" and then indicated that, if he had authority

to do so, he would grant the motion to amend, but "only with regard" to these two remaining

issues.   *Id.*

Finally, although the anti-commandeering claim was not addressed, the undersigned finds

that it, too, should be dismissed because the State Governments fail to state a viable claim for

relief.   In their First Amended Complaint, the State Governments allege that the CMS Mandate

contravened the anti-commandeering doctrine by requiring their state-run hospitals to either fire

their unvaccinated employees or to forgo all Medicaid (and, where applicable, Medicare)

funding.   (Compl., ¶¶ 193-194).   The CMS Mandate also commandeers the States because it

forces State surveyors to enforce the CMS Mandate by verifying healthcare provider compliance,

which "dragoons" the States into enforcing federal policy.   *Id.*

"The anti-commandeering doctrine recognizes the fundamental structural principal that

_____

[6] The State Governments emphasize in their opposition that "The Supreme Court effectively
resolved the appeal of the preliminary injunction, but not this case itself," and, thus, contend that
dismissal is "inappropriate."   [doc. #66, p. 1].   That opposition, however, ignores the
applicability of the law of the case doctrine to preliminary injunction findings of law.   To grant
a preliminary injunction, the District Court was required to find that there was a substantial
likelihood of success on the merits on the claims indicated.   Conversely, in granting a stay of the
preliminary injunction, the Supreme Court disagreed with that finding. The Fifth Circuit then
vacated the stay.   Those conclusions of law follow the case, and there has been no amendment
to assert new factual allegations that would affect the analysis.

the Constitution . . . withhold[s] from Congress the power to issue orders directly to the States." *Brackeen v. Haaland*, 994 F.3d 249, 401–02 (5th Cir. 2021), *cert. granted sub nom. Nation v. Brackeen*, ___ U.S. ___; 142 S.Ct. 1204 (2022), and *cert. granted,* ___ U.S. ___; 142 S.Ct. 1205 (2022), and *cert. granted sub nom. Texas v. Haaland*, ___ U.S. ___; 142 S.Ct. 1205 (2022), and *cert. granted,* ___ U.S. ___; 142 S.Ct. 1205 (2022).   While Congress may attach conditions on the receipt of federal funds or even offer states the option of regulating private activity according to federal standards, it may not issue a "a simple command to state governments to implement legislation enacted by Congress . . . or compel the States to enact or administer a federal regulatory program." *Id.* (internal quotation marks and citations omitted).

However, the anti-commandeering principle "does not apply when Congress evenhandedly regulates an activity in which both States and private actors engage." *Brakeen*, 994 F.3d at 410.   Here, the District Court recognized previously that many of the healthcare facilities required to track and regulate the CMS Mandate are privately owned and managed. *See* Nov. 30, 2022 Order [doc. # 28].   Consequently, the CMS Mandate evenhandedly regulates the activity as to both public and private actors,[7]  which does not transgress the anti-commandeering principle.

The State Governments also allege that the CMS Mandate forces state surveyors to verify healthcare provider compliance, which will cause them to suffer increased enforcement costs. Compl., ¶¶ 87-92.   According to the First Amended Complaint, however, state surveyors already regularly evaluate healthcare facilities' compliance with federal and state regulations to ensure compliance with Medicare and Medicaid requirements.   *Id*.   The State Governments'

---

[7] At least some of the State Governments run healthcare facilities.   *See* Compl.,¶¶ 85-86.

allegation that they will suffer increased enforcement costs is conclusory and entitled to no weight.   Therefore, the CMS Mandate does not force the state surveyors to do anything that they are not already doing, apart from possibly enforcing an additional regulation that is objectionable to the State Governments.   The State Governments have not shown that these circumstances suffice to state a plausible claim for relief for violation of the anti-commandeering principle.

Finally, the undersigned observes that, despite their assurances they would do so, the State Governments have failed to seek leave to amend for more than four months.   At this point, the unexplained delay has become undue, and any amendment is simply too late.

## Conclusion

For the above-assigned reasons,

IT IS RECOMMENDED that the U.S. Government's motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 64] be GRANTED and that Plaintiffs' First Amended Complaint be DISMISSED, with prejudice, in its entirety.   FED. R. CIV. P. 12(b)(6).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.   A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.   A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.   Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS**

13

**REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 3rd day of November, 2022.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE

14